IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:18-CV-198-D

| | |
|---|---|
| DONNIE R. GREEN and <br> GLENN MALCOLM DAVIS, <br><br> Plaintiffs, <br><br> v. <br><br> GREYHOUND LINES, INC. and <br> AMALGAMATED TRANSIT UNION <br> LOCAL 1700, <br><br> Defendants. | **ORDER** |

On December 21, 2018, Donnie R. Green ("Green") and Glenn Malcolm Davis ("Davis"; collectively "plaintiffs") filed a complaint against Greyhound Lines, Inc. ("Greyhound") and Amalgamated Transit Union Local 1700 ("ATU"; collectively "defendants") under Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185 [D.E. 2]. On February 6, 2019, defendants moved to dismiss plaintiffs' complaint [D.E. 14, 16] and filed memoranda in support [D.E. 15, 17]. On March 13, 2019, plaintiffs filed an amended complaint [D.E. 24]. On March 27, 2019, defendants moved to dismiss plaintiffs' amended complaint for failure to state a claim upon which relief can be granted [D.E. 29, 31] and filed memoranda in support [D.E. 30, 32]. On April 17, 2019, plaintiffs responded in opposition [D.E. 33–36]. Defendants replied [D.E. 37, 38]. On May 28, 2019, the court denied as moot defendants' motions to dismiss plaintiffs' original complaint [D.E. 39, 40]. As explained below, the court grants the defendants' motions to dismiss and dismisses plaintiffs' amended complaint.

I.

Plaintiffs worked as bus drivers for Greyhound for approximately twenty years. See Am. Compl. [D.E. 24] ¶¶ 12–14. Plaintiffs reported to work in Raleigh, North Carolina, but they lived approximately one to two hours away from Raleigh. See id. ¶¶ 12, 15, 17. Plaintiffs also were members of ATU and were subject to a collective bargaining agreement ("CBA") between Greyhound and ATU. See id. ¶¶ 8, 11. The CBA provided that employees may be disciplined only for "just cause." [D.E. 24-1] 12; see [D.E. 24] ¶¶ 20, 34. The CBA established a three-step grievance procedure for ATU to contest employee discipline decisions. See [D.E. 24-1] 13–14; [D.E. 24] ¶ 38. In the case of employee termination, the CBA provided for an expedited grievance process. See [D.E. 24-1] 13 ("Discharge grievances must be initially filed at Step 2."). If ATV did not agree with the outcome of the grievance process, the CBA also provided a mechanism by which ATU could refer disciplinary matters to arbitration. See id. at 13–14; [D.E. 24] ¶ 52.

Drivers who lived far from Raleigh often used a company credit card to pay for hotels after shifts. See [D.E. 24] ¶¶ 17, 19. According to plaintiffs, their former supervisor Abe Jones ("Jones") approved this custom "to prevent unsafe driving to the [p]laintiffs' homes." Id. ¶ 17. In total, plaintiffs allege that eight drivers used their company credit cards to pay for hotel rooms. See id. ¶ 19. In March 2018, Kerwin Washington ("Washington") replaced Jones as plaintiffs' supervisor. See id. ¶ 18. Plaintiffs allege that Washington did not approve of drivers using their company credit card to pay for hotels but did not notify plaintiffs of this fact. See id. ¶¶ 18, 35. Thus, plaintiffs claim that they had no notice that using a company credit card to pay for hotel rooms violated Greyhound's policies. See id. ¶ 35.

On May 19, 2018, Greyhound terminated Green. See id. ¶ 13. On May 22, 2018, Greyhound terminated Davis. See id. ¶ 14. Greyhound terminated plaintiffs (and another driver) for violating

2

company policy, violating a driver rule concerning mishandling of company funds, and theft. See id. ¶¶ 16, 19, 22. Plaintiffs allege that Greyhound only terminated three out of eight of the drivers who regularly used a company credit card to pay for hotels. See id. ¶¶ 19, 22.

Plaintiffs believed that Greyhound terminated them without just cause and sought assistance from ATU to contest their terminations. See id. ¶¶ 20–21, 26. Plaintiffs allege that, after Green's termination, a union representative assured Green that "everyone would get his job back." Id. ¶ 25. Nevertheless, plaintiffs allege that "ATU did not investigate the terminations" and that Davis could not reach a union representative after his termination. Id. ¶¶ 23–24. A union representative filed a Step 3 grievance on behalf of the plaintiffs, but plaintiffs allege that the representative did not meet with plaintiffs before filing the grievance and did not provide plaintiffs with copies of the grievances. See id. ¶¶ 26–27, 30. Additionally, plaintiffs allege that Davis could not attend his Step 3 meeting because of "jury duty" and defendants refused to reschedule to accommodate his scheduling conflict. Id. ¶¶ 28–29. Plaintiffs did not successfully resolve their grievances using the procedures under the CBA. On August 30, 2018, ATU notified plaintiffs that ATU's Executive Board discussed plaintiffs' grievances and decided not to refer their grievances to arbitration. See [D.E. 24-1] 81–82; [D.E. 24] ¶ 53.

On March 13, 2019, plaintiffs filed an amended complaint against Greyhound and ATU [D.E. 24]. Plaintiffs allege a hybrid action under Section 301 of the LMRA: (1) a claim of breach of a CBA against Greyhound and (2) a claim of breach of the duty of fair representation against ATU. See id. ¶¶ 31–55.

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544,

3

555–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, plaintiffs' allegations must "nudge[ ] their claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). A court also may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

4

A.

"[A]n individual employee may bring suit against his employer for breach of a collective bargaining agreement." DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 163 (1983); see 29 U.S.C. § 185(a). To bring a claim for breach of a CBA, however, an employee must "attempt to exhaust any grievance or arbitration remedies provided in the" CBA. DelCostello, 462 U.S. at 163. Because an employee is dependent on his or her union to represent the employee in such processes, "this rule works an unacceptable injustice when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." Id. at 164; see Vaca v. Sipes, 386 U.S. 171, 177, 181–83, 186 (1967); Groves v. Commc'n Workers of Am., 815 F.3d 177, 181 (4th Cir. 2016); Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 131 n.3 (4th Cir. 2002); Buckner v. United Parcel Serv., Inc., No. 5:09-CV-411-BR, 2010 WL 2889586, at *4 (E.D.N.C. July 21, 2010) (unpublished), aff'd, 489 F. App'x 709 (4th Cir. 2012) (per curiam) (unpublished). Accordingly, courts impose a duty of fair representation on unions in representing employees in grievance or arbitration proceedings. See Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 564 (1976); Groves, 815 F.3d at 181.

"[A]n employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding," if a union fails to fairly represent an employee in addressing employee grievances. DelCostello, 462 U.S. at 164; see Vaca, 386 U.S. at 186; Groves, 815 F.3d at 181. Courts generally refer to such an action as a hybrid 301/fair representation action or a "hybrid 301" action. See, e.g., DelCostello, 462 U.S. at 165; Thompson v. Aluminum Co. of Am., 276 F.3d 651, 656 (4th Cir. 2002); Terry v. Chauffeurs, Teamsters & Helpers, Local 391, 863 F.2d 334, 337–38 (4th Cir. 1988), aff'd, 494 U.S. 558 (1990). To state a hybrid 301 claim, an employee must plausibly allege both (1) that the union breached its duty of fair

5

representation and (2) that the employer violated the CBA. See DelCostello, 462 U.S. at 164–65; Thomas v. Siemens VDO Auto. Corp., 142 F. App'x 743, 749 (4th Cir. 2005) (per curiam) (unpublished); Thompson, 276 F.3d at 656. An employee must first prevail on an unfair representation claim against a union before litigating the merits of a breach of CBA claim against an employer. See United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 67 (1981) (Stewart, J., concurring); Thompson, 276 F.3d at 656–57. "[N]either claim is viable if the other fails." Thompson, 276 F.3d at 657 (quotation omitted).

B.

As for plaintiffs' claim that ATU breached its duty of fair representation, unions have a duty "to serve the interests of all members without hostility or discrimination toward any, to exercise [their] discretion with complete good faith and honesty, and to avoid arbitrary conduct." Vaca, 386 U.S. at 177; see Thompson, 276 F.3d at 657. Thus, a union breaches its duty of fair representation if it acts arbitrarily, discriminatorily, or in bad faith. See Thomas, 142 F. App'x at 749; Thompson, 276 F.3d at 657. At the same time, a union has "broad discretion in treating competing interests of members of the bargaining unit." Smith v. Local 7898, United Steelworkers of Am., 834 F.2d 93, 96 (4th Cir. 1987). Whether a union acted arbitrarily, discriminatorily, or in bad faith "requires a separate analysis" because each "represents a distinct and separate obligation" on the part of a union. Thompson, 276 F.3d at 657.

"While the analysis of whether a union's actions were arbitrary looks to the objective adequacy of that union's conduct, the analysis of discrimination and bad faith must focus on the subjective motivation of the union officials." Id. at 658. "Proof of negligence or the exercise of poor judgment" would not be sufficient to establish a breach of the union's duty. Smith, 834 F.2d at 96; see United Steelworkers of Am. v. Rawson, 495 U.S. 362, 372–73 (1990); Ash v. United

6

Parcel Serv., Inc., 800 F.2d 409, 411 (4th Cir. 1986) (per curiam). "Rather, the union's conduct must be grossly deficient or in reckless disregard of the member's rights. A flawless performance is not required to fulfill the union's duty." Smith, 834 F.2d at 96 (alterations and quotations omitted); see Ash, 800 F.2d at 411. "As long as a union does not arbitrarily ignore a meritorious grievance or handle it in a perfunctory manner, that union has not violated its duty of fair representation." Thompson, 276 F.3d at 658. Moreover, an employee "has no absolute right to insist that his grievance be taken to a certain level; a union may screen grievances and press only those that it concludes will justify the expense and time involved . . . ." Id. (quotation omitted); see Vaca, 386 U.S. at 191–92.

Viewing the evidence in the light most favorable to plaintiffs, plaintiffs have alleged that ATU filed grievances on behalf of plaintiffs, represented plaintiffs in grievance meetings, and declined to arbitrate plaintiffs' grievances after discussing their grievances during a board meeting. See [D.E. 24] ¶¶ 38–53.[1] Plaintiffs also allege that ATU did not investigate their claims. See id. ¶ 23. Plaintiffs do not plausibly allege that ATU subjectively acted in bad faith or in a discriminatory manner or that ATU's representation was objectively inadequate. See, e.g., Thomas, 142 F. App'x at 749–50; Thompson, 276 F.3d at 658. Moreover, plaintiffs do not plausibly allege that ATU acted improperly in declining to arbitrate plaintiffs' grievances. Accordingly, plaintiffs fail to plausibly allege that ATU breached its duty of fair representation, and therefore plaintiffs cannot maintain a hybrid 301 action against ATU and Greyhound. Thus, the court grants defendants' motions to dismiss plaintiffs' amended complaint.

---

[1] The court need not accept plaintiffs' legal conclusion that ATU failed to fairly represent plaintiffs. See Iqbal, 556 U.S. at 678–79; Giarratano, 521 F.3d at 302; cf. [D.E. 24] ¶¶ 39, 54–55.

Alternatively, even assuming that plaintiffs have plausibly alleged that ATU breached its duty of fair representation, plaintiffs must plausibly allege that Greyhound breached the CBA to state a claim for relief against both defendants. Viewing the evidence in the light most favorable to plaintiffs, plaintiffs allege that Greyhound terminated plaintiffs without just cause because plaintiffs' former supervisor approved the use of company credit cards to pay for hotels. See [D.E. 24] ¶¶ 15–17, 19–20, 34–35. Under the CBA, just cause "includes violation of [c]ompany rules, regulations and instructions not inconsistent with [the CBA]." [D.E. 24-1] 12. Despite the CBA's silence on the specific use of company credit cards to pay for hotel rooms for drivers who have to travel long distances to report to work, plaintiffs fail to plausibly allege that their conduct (i.e., charging the cost of hotel rooms to their company credit cards) did not violate Greyhound's general rules concerning use of company credit cards or misuse of company funds. Thus, plaintiffs fail to plausibly allege that their termination violated the CBA. Accordingly, even assuming plaintiffs plausibly allege that ATU breached its duty of fair representation, plaintiffs fail to state a hybrid 301 claim against defendants.

III.

In sum, the court GRANTS defendants' motions to dismiss [D.E. 29, 31] and DISMISSES plaintiffs' amended complaint. The clerk shall close the case.

SO ORDERED. This _19_ day of June 2019.

JAMES C. DEVER III
United States District Judge